## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**ROY BROOKS, Ed. D.**                                                          **PLAINTIFF**

**v.**                              **CASE NO. 4:07-CV-00453 GTE**

**THE LITTLE ROCK SCHOOL DISTRICT, et al.**                    **DEFENDANTS**

### <u>ORDER OF DISMISSAL WITHOUT PREJUDICE</u>

The Court *sua sponte* raises the issue whether this case should now be dismissed based on principles of ripeness. The ripeness doctrine "has both Article III and prudential components" and is an issue of subject matter jurisdiction.[1] Questions related to a court's subject matter jurisdiction "may be raised *sua sponte* at any time."[2] After a full consideration of the legal issues, as well as the parties' respective positions, the Court concludes that the remaining issues should be dismissed as not factually ripe for adjudication.

### BACKGROUND

The Court previously raised this issue informally on Friday, May 11, 2007, with a short e-mail expressing the view that the case might now be dismissed without prejudice in light of the Little Rock School Board's apparent intent not to pursue a suspension of Dr. Brooks prior to the scheduled termination for cause hearing. The Court invited the parties to indicate whether they agreed or disagreed with that view. All counsel of record have now responded, via e-mail, to the

---

[1] *Dakota, Minnesota & Eastern Railroad Corp. v. South*, 362 F.3d 512, 520 (8th Cir. 2004).

[2] *Lundeen v. Canadian Pacific Ry. Co.,* 447 F.3d 606, 611 (8th Cir. 2006).

Dockets.Justia.com

Court's inquiry. Their responses are summarized below.

Mr. Jess Askew, counsel for Dr. Brooks, opposes a dismissal at this time. For cause, he argues that the claim for damages for past conduct in connection with the suspension process remains viable. Mr. Askew further states that, if Dr. Mitchell and Mr. Daugherty sit in on a hearing or vote in connection with any proceedings against Dr. Brooks to suspend or terminate his employment, such actions will violate his due process and contractual rights and may provide a basis for additional damages.

Mr. Askew also states that he and Mr. Welch, the attorney for the School Board, are in the process of discussing the due process and notice issues in connection with the upcoming May 30th termination hearing. Mr. Askew anticipates that Dr. Brooks may wish to seek further relief in the event the parties are unable to agree.

Finally, Mr. Askew wishes to maintain the preliminary injunction against the Board on the suspension issues. He argues that such preliminary injunction remains necessary so long as there is any possibility the Board may reinitiate suspension proceedings.

Mr. Cain, on behalf of Dr. Mitchell and Mr. Daugherty, argues that the case should be dismissed as moot with respect to suspension and as not ripe with respect to termination. Mr. Cain also reasserts his earlier objection to this Court's involvement based on *Younger v. Harris*[3] abstention principles. Finally, with regard to any claim for damages, Mr. Cain argues that there is no basis for an award of damages unless and until Dr. Brooks is terminated.

Mr. Welch, on behalf of the School Board, echoes Mr. Cain's analysis. Mr. Welch objects to this Court's exercise of a "continuing jurisdiction" in anticipation of potential future wrongdoing.

---

[3] 401 U.S. 37 (1971).

### PRELIMINARY RELIEF GRANTED & DENIED

Prior to considering the ripeness issue, it is helpful to discuss the injunctive relief the Court previously granted and denied to Dr. Brooks. On Friday, May 4, 2007, Dr. Brooks invoked the Court's jurisdiction seeking preliminary injunctive relief on an emergency basis. The emergency was occasioned by the School Board's insistence on proceeding with suspension proceedings on Monday, May 7, 2007, at 5:30 p.m., proceedings that Dr. Brooks contended were procedurally flawed, particularly in light of the participation of Dr. Mitchell and Mr. Daugherty. Dr. Brooks raised serious issues related to his ability to obtain a fair suspension hearing. Dr. Brooks pointed to a letter written by Dr. Mitchell to school administrative employees and potential witnesses, contending that such letter was calculated to keep him from presenting truthful testimony in his favor. He also pointed out that Dr. Mitchell had attempted to suspend him without any hearing.

The Court quickly scheduled a hearing for Monday. With the agreement of the parties, the Court bifurcated the issues, first taking up the issue of whether that afternoon's suspension hearing should proceed and reserving the issue of whether Dr. Mitchell and Mr. Daugherty should be prohibited from participating in any suspension or termination proceedings against Dr. Brooks. At the conclusion of Monday's hearing, the Court granted Dr. Brooks' limited preliminary injunctive relief, holding that the Board was required to have a hearing officer preside at the suspension hearing and that Dr. Brooks was entitled to receive written notice of the grievances alleged to justify his suspension at least 5 days prior to the suspension hearing.[4] The Court scheduled phase two of the hearing for Wednesday, May 9, 2007, to address the issue of whether to enjoin Dr. Mitchell's and Mr. Daugherty's participation in either the suspension or

---

[4]  Court's Order of May 7, 2007 (Doc. # 10-2).

termination proceedings.

Late on Tuesday, May 9, 2007, the Court issued a Letter Order denying Plaintiff's remaining motion for preliminary injunctive relief.[5]   The Court, although acknowledging that the situation presented the potential for due process violations, concluded that it would not exercise its equitable powers to prospectively enjoin Dr. Mitchell or Mr. Daugherty from participating in either the suspension or termination hearings.[6]   The Court further noted that Dr. Brooks would have the option to return to federal court to vindicate any future violation of his constitutional rights.

During a Special Board Meeting called on Thursday, May 10, 2007, Dr. Mitchell read a prepared written statement announcing that she would not vote for a suspension hearing and that the School Board would focus instead on the upcoming May 30, 2007, termination hearing.  The Court further understands that a hearing officer has been selected by agreement to preside at the termination hearing.  Thus, the situation now is much different than the one that existed on May 4th when emergency preliminary relief was first sought.  Dr. Brooks no longer faces a suspension hearing.   Further, the only Court-imposed limitation on a suspension hearing, should one be sought, is that the Board will provide Dr. Brooks with 5 days notice of the specific charges and an impartial hearing officer.  The Court has confidence that in the event a new suspension

---

[5]  Court's Letter Order of May 8, 2007 (Doc. # 17).  Because the Court assumed that everything Plaintiff alleged in his motion was true in denying the motion, there was no need for an evidentiary hearing.

[6]  In the course of determining whether to grant preliminary injunctive relief, the Court was called upon to consider such factors as the public's interest and the likelihood that the alleged conduct had violated Dr. Brooks' constitutional rights.  These considerations led the Court to make certain observations regarding procedural due process in the context of this case.  Such observations, made at the preliminary injunction phase, were in no way intended to be, and by law are not, binding in the event of a future claim by Dr. Brooks.

hearing is initiated, such limitations will be honored. Further, the Court is willing to construct the dismissal of this action such that Plaintiff retains the right to enforce the terms of the limited preliminary relief previously granted.

### DISCUSSION

The question thus arises, what remains of this action that is ripe for judicial review? Suspension is no longer contemplated. The May 30th termination hearing looms, but it will be presided over by an impartial hearing officer agreed to by both parties, who presumably will make written findings of fact and conclusions of law per the employment contract. In short, the glaring procedural deficiencies that marred the proposed suspension hearing and justified the Court's emergency "prior involvement" are not present at this time.

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' "[7] In assessing whether a dispute is ripe for adjudication, a court must evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."[8]

The Court has declined to prohibit prospectively the participation of Dr. Mitchell and Mr. Daugherty in any suspension or termination proceedings involving Dr. Brooks. Such was the primary relief requested in Plaintiff's Amended Complaint. The suspension hearing has been

---

[7] *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 807-08, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (citations omitted).

[8] *Id.* (citation omitted).

called off.  So, again, what issues remain for this Court to decide?

It is unclear to the Court how any claim for damages could exist at this time -- prior to any suspension or termination.  Additionally, the Amended Complaint requests only preliminary and permanent injunctive relief in connection with the due process violations alleged.[9]  The Court has considered and ruled on all injunctive relief requested except for Plaintiff's request to enjoin "any hearing regarding Dr. Brook's employment that does not conform to the requirements of the contract."[10]  The Court recognizes that Plaintiff has also raised state law claims, for violation of the Arkansas Freedom of Information Act and for intentional interference with contract.  The Court's dismissal of this action without prejudice will not prohibit Plaintiff from pursuing such claims in state court, either now or later.

The Court understands that Dr. Brooks anticipates that further relief against the Board **may** be necessary if counsel are unable to reach agreement in connection with certain due process issues related to the notice and hearing requirements for the termination proceeding.  However, the fact that Dr. Brooks' rights may in the future be violated does not justify keeping this federal court action open against the School Board.  Federal court jurisdiction should not be invoked to guard against anticipated future constitutional harms which have not come to pass and which may not occur.

---

[9]  Amended Complaint at ¶ 42.  The Amended Complaint does not delineate between procedural and substantive due process but simply alleges a due process violation.  The concepts are distinct.  Thus far, the Court has considered only Dr. Brook's procedural due process claims because he has not yet, and may never, be deprived of a liberty or property interest to which substantive due process applies.  The procedural protections of the Due Process Clause guarantee only that there is a fair decision-making process before the government takes some action.  Ronald D. Rotunda & John E. Nowak, 2 Treatise on Constitutional Law § 14.6, at 530 (3d ed. 1999).

[10]  Amended Complaint at ¶ 42.

The parties spent much of last week preparing for, or in, federal court. It is the view of this Court that all the issues that were ripe for judicial resolution have now been resolved. The obvious procedural due process deficiencies that previously existed have now been remedied. The Defendants and the Plaintiff are entitled to go forward with their preparations for the upcoming termination proceeding without this federal lawsuit looming over that proceeding. And, of course, the parties could, even at this late date, come to some voluntary accommodation that might obviate the need for that proceeding.

In sum, the Court has evaluated both of the factors relevant to the determination of whether an administrative action is ripe for judicial review: (1) the fitness of the remaining issues for judicial consideration; and (2) the hardship to the parties if court consideration is withheld at this time.[11] For the reasons discussed above, the Court concludes that the remaining issues in this case are not factually ripe.

It is also appropriate to consider and comment on the *Younger* abstention doctrine. As commentators have noted, "[r]ipeness becomes closely mingled with abstention doctrines when deference rests on the prospect of some future state court proceeding rather than ongoing litigation."[12] Defendants asserted the abstention doctrine during the preliminary injunction hearing and again in responding to the Court's e-mail inquiry, contending that the Court should abstain out of respect for the ongoing school board proceedings. Defendants are correct in noting that *Younger* abstention principles have been extended to pending state administrative proceedings. The Supreme Court has held that federal courts should abstain when there are state

---

[11] *National Park, supra*, 538 U.S. at 808.

[12] 13A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 3532.1 (2d ed. 1983).

administrative proceedings "in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." [13]

The original impetus for the creation of the *Younger* abstention doctrine was occasioned by a request to enjoin a pending state criminal proceeding.[14]  Similarly, in the *Dayton Christian Schools* case, which extended the doctrine to state court administrative proceedings, the plaintiff was attempting to enjoin state administrative proceedings based upon its federal First Amendment defense to all such proceedings.[15]   Dr. Brooks has not sought a blanket Order prohibiting  the School Board from attempting to suspend or terminate him.  Rather, he has attempted to ensure that he is provided with the procedural due process required by his contract and the Constitution in connection with such proceedings.[16]

Finally, even where *Younger* abstention would otherwise apply, the "federal courts have consistently and repeatedly affirmed that their abhorrence of enjoining a state prosecution must yield when the state prosecution threatens a party with 'great and immediate irreparable injury.'"[17]  Dr. Brooks' clear-cut claims of wrongdoing in this case regarding the suspension hearing were

---

[13]  *Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619 (1986).

[14]  *Id.*, 401 at 43.

[15]  *Dayton Christian Schools*, *supra*, 477 at 619-20.

[16]  This case is readily distinguishable from one of this Court's prior cases, *Humphrey v. Judicial Discipline & Disability Comm.*, LR-C-97-795.  In the *Humphrey* case, this Court applied *Younger* abstention principles in declining a circuit judge's request to postpone or enjoin a state disciplinary proceeding against him based upon the contention that the proceedings were racially motivated.  No issues of procedural due process were involved in the *Humphrey* case.

[17]  *Lewellen v. Raff*, 843 F.2d 1103, 1109 (8th Cir. 1988)(recognizing an exception to the application of *Younger* abstention for proceedings initiated in bad faith or for the purpose of harassment).

tantamount to a claim of bad-faith under *Younger* jurisprudence.  The refusal of the Defendants

to provide Dr. Brooks with advance notice of specific charges or an impartial hearing officer

were obvious and flagrant procedural due process shortcomings that, in the Court's judgment,

would have constituted harassment had the suspension hearing gone forward as proposed on May

7, 2007.  And, of course, Dr. Brooks contended that the suspension hearing was nothing more

than a sham proceeding to carry out Dr. Mitchell's prior public attempt to summarily suspend

him without any process whatsoever.

While the Court refused to apply *Younger* abstention in the context of the emergency

determination of whether to permit the suspension hearing to go forward, it was subsequently

influenced by the principles of federalism and comity expressed by the doctrine in declining to

grant Dr. Brooks most of the injunctive relief he sought.  The Court is influenced by the same

principles now in finding that the remaining issues are not ripe for federal court adjudication.

The Supreme Court explained in *Younger* the underlying reasons for imposing limitations

on a federal court's exercise of its equity powers to avoid interfering with ongoing state court

proceedings.

> This underlying reason . . .  is reinforced by an even more vital
> consideration, the notion of 'comity,' that is, a proper respect for
> state functions, a recognition of the fact that the entire country is
> made up of a Union of separate state governments, and a
> continuance of the belief that the National Government will fare
> best if the States and their institutions are left free to perform their
> separate functions in their separate ways. This, perhaps for lack of
> a better and clearer way to describe it, is referred to by many as
> 'Our Federalism,' and one familiar with the profound debates that
> ushered our Federal Constitution into existence is bound to respect
> those who remain loyal to the ideals and dreams of 'Our
> Federalism.' The concept does not mean blind deference to 'States'
> Rights' any more than it means centralization of control over every
> important issue in our National Government and its courts. The
> Framers rejected both these courses. What the concept does
> represent is a system in which there is sensitivity to the legitimate

> interests of both State and National Governments, and in which the
> National Government, anxious though it may be to vindicate and
> protect federal rights and federal interests, always endeavors to do
> so in ways that will not unduly interfere with the legitimate
> activities of the States. It should never be forgotten that this slogan,
> 'Our Federalism,' born in the early struggling days of our Union of
> States, occupies a highly important place in our Nation's history
> and its future.

*Id.*, 401 U.S. at 44-45.

Thus, a federal district court, whether applying principles of ripeness or abstention, must balance the need to vindicate and protect federal rights, while allowing state elected officials to carry out their duties and obligations, free from undue interference, intrusion or supervision by the federal courts.  From the beginning of this lawsuit, the Court has attempted to strike the proper balance between these two competing interests.  The Court hopes and believes that the proper balance has been struck by its conclusion now that further federal court involvement at this point is unwarranted.

## CONCLUSION

For the reasons stated above, the Court concludes that an Order of Dismissal Without Prejudice should be entered as to the unresolved issues in this case.

IT IS THEREFORE ORDERED THAT this case be, and it is hereby, DISMISSED WITHOUT PREJUDICE.  The Court retains jurisdiction through May 30, 2007 (the date Dr. Brooks' termination hearing is scheduled to commence) for the limited purpose of enforcing its prior Order Granting Limited Injunctive Relief (Docket No. 10).

IT IS SO ORDERED THIS  17th  day of May, 2007.

_/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE