**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**ROY G. BROOKS, Ed. D.** **PLAINTIFF**

**v.** **CASE NO. 4:07-CV-00453 GTE**

**THE LITTLE ROCK SCHOOL DISTRICT, ET AL.** **DEFENDANTS**

**BRIEF IN SUPPORT OF PLAINTIFF'S PETITION FOR**
**ATTORNEYS' FEES AND PLAINTIFF'S BILL OF COSTS**

## I. Factual and Procedural Background

Plaintiff Roy G. Brooks ("Dr. Brooks") submits this brief in support of his petition for attorneys' fees and costs. This case arose out efforts by the Board of Education of the Little Rock School District ("Board") to remove Dr. Brooks from his position as Superintendent by suspending and terminating him for cause. Dr. Brooks served as Superintendent pursuant to an employment contract between himself and the Board ("Contract"). *See* Contract, Petition Exhibit F. The original term of the Contract was three years, starting on July 1, 2004. *Id*. at p. 1. The Board amended the contract twice, on June 29, 2005 and August 24, 2006, adding a year to its term each time. Contract, Petition Exhibit F, First Amendment and Second Amendment. Consequently, the final Contract expired on June 30, 2009. *Id.*

Under the terms of the Contract, the Board had two ways to terminate Dr. Brooks's employment with the Little Rock School District ("District") unilaterally. The Board could discharge Dr. Books "for cause" if he engaged in conduct "seriously prejudicial" to the District. *Id*. at §11.D. In the event that the Board sought to discharge Dr. Brooks for cause, the Contract guaranteed certain due process rights, which included written notice of the charges underlying the proposed discharge and a hearing before an impartial hearing officer

chosen by mutual agreement of the parties. *Id*. Dr Brooks was entitled to notice of the charges thirty days prior to the hearing. *Id.* If the Board had reason to believe that Dr. Brooks had engaged in conduct that seriously impaired his ability or fitness to lead the District, the Board could, upon written notice and in accordance with the due process protections applicable to termination for cause, seek to suspend Dr. Brooks pending his termination hearing. *Id.* If the Board wanted to remove Dr. Brooks from office before the termination hearing, it could suspend him based on certain grounds so long as a suspension hearing with the same due process guarantees was provided.

Alternatively, the Board could unilaterally terminate Dr. Brooks's employment by buying out the Contract. *Id*. at §11.E. Other than ninety days' notice, the Contract did not afford Dr. Brooks any due process rights in connection with a buyout.

On April 6, 2007, Board president Katherine Mitchell ("Dr. Mitchell") publicly announced in an interview on KARN radio that the Board intended to terminate Dr. Brooks for cause. At a special meeting on April 11, 2007, the Board voted to give notice to Dr. Brooks in writing of charges which, if proven, would constitute reason for discharge. Minutes, Special Board Meeting, April 11, 2007, Petition Exhibit G.

At a regular meeting on April 26, 2007, Board member Michael Daugherty moved that the Board authorize its attorney to present a letter outlining its charges against Dr. Brooks. Minutes, Regular Board Meeting, April 26, 2007, Petition Exhibit H. Board members Baker Kurrus, Larry Berkley and Melanie Fox spoke against the authorization. Mr. Kurrus stated that the letter containing the charges had not been reviewed by the Board and opined that to "vote under the circumstances without inquiry would be reckless" and expose

the district and Board members to liability. *Id.* He also contended that the Board's actions violated Dr. Brooks's due process rights. *Id.* Nevertheless, the motion carried 4-3.

Dr. Mitchell then moved to suspend Dr. Brooks immediately, in obvious violation of the due process rights outlined in Section 11.D. of the Contract. *See id*; Contract § 11.D. The Board's attorney informed Dr. Mitchell that there was no contractual basis for an immediate suspension. *Id.* Undeterred, the Board voted to suspend Dr. Brooks "in accordance with his contract," ignoring the advice of its own attorney that suspension could be considered only after Dr. Brooks was accorded his contractual due process rights. *Id.* In addition to violating Dr. Brooks's contractual rights, the Board disregarded its own policies and procedures in proceeding with the vote to suspend because the matter did not appear on the agenda and the Board did not vote to suspend the rules in order to consider the matter. Board Policy BED, Petition Exhibit I.

On April 27, 2007, Dr. Mitchell sent a letter to nine senior administrative employees of the District, asking them to "refrain from taking any action that would undermine the charges against Dr. Brooks or otherwise harm the LRSD." *See* letter, Ex. M to Plaintiff's Motion for Preliminary Injunction.

On April 30, 2007, Dr. Brooks filed suit against board members Mitchell and Daugherty under 42 U.S.C. § 1983, alleging that they intentionally interfered with Dr. Brooks's rights under the Contract and intentionally violated: his due process rights guaranteed by the Fourteenth Amendment to the United States Constitution, the policies and resolutions of the District and the Board, and Arkansas statutes, including the Freedom of Information Act. On May 5, 2007, Dr. Brooks amended his complaint to add the District and the remaining members of the Board.

On May 4, 2007, Dr. Brooks moved for a temporary restraining order and preliminary injunction against the involvement of Dr. Mitchell and Mr. Daugherty in the suspension and termination proceedings against him, asserting that the two were fatally biased and that their participation would violate his right to due process. This Court held a hearing on May 7. While declining to require Dr. Mitchell and Mr. Daugherty to recuse from the suspension and termination hearings, the Court held as a matter of law that the letter from Dr. Mitchell to senior administrative employees was objectively threatening and that any reasonable employee receiving such a letter would likely conclude that his or her employment would be in jeopardy if he or she offered testimony or other evidence that supported Dr. Brooks's defense. Letter Order, May 8, 2007.

After the hearing, the Board decided not to proceed with its attempt to suspend Dr. Brooks. Dr. Brooks continued to prepare for the termination hearing, which the Board insisted would be held on May 30, 2007.

At a special meeting on May 24, 2007, Mr. Daugherty moved to drop the effort to terminate Dr. Brooks for cause and to buy out the Contract under the provisions in Section 11.E. Minutes, Special Board Meeting, May 24, 2007, Petition Exhibit J. Mr. Kurris again protested, stating that Board policy BED made it improper for the board to adopt a motion at a special board meeting that was not on an agenda provided two days before the meeting. *Id*; Board Policy BED, Petition Exhibit I. The motion passed 4-3. Because the Board decided to buy out the Contract, the May 30, 2007 hearing was cancelled.

**II. Attorneys' Fees and Costs**

Federal Rules of Civil Procedure 54(d) permits an award of costs to a prevailing party. The general rule in America is that, absent an exception, litigants are to cover their

own attorneys' fees. The "American Rule" is not an absolute bar to the recovery of attorneys' fees, however, as there are two important exceptions. Attorneys' fees are recoverable: (1) where an enforceable contract provides for the award of attorneys' fees; or (2) where a statute expressly provides for the recovery of attorneys' fees. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967); *see also F. D. Rich Co., Inc. v. U. S. for Use of Indus. Lumber Co., Inc.*, 417 U.S. 116, 130 (1974). In the instant case, Dr. Brooks is entitled to recover attorneys' fees pursuant to the Contract and the statute under which his action was brought.

A. Dr. Brooks contract expressly provides for the recovery of attorneys' fees.

Attorneys' fees are recoverable when there is an enforceable contract in place that provides for the award of attorneys' fees. *Fleischmann*, 386 U.S. at 717. Where attorneys' fees are provided for by contract, a trial court does not possess the same degree of discretion to deny recovery of fees that it has when applying a statute allowing for a discretionary award. *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 226 (5th Cir. 1975). A trial court may decline to award attorneys' fees authorized by contract only when it believes that such an award would be inequitable and unreasonable. *United States v. Mountain States Construction Co.*, 588 F.2d 259, 263 (9th Cir. 1978).

The Contract in the instant case expressly provided that Dr. Brooks was entitled to recover attorneys' fees and expenses in the situation at issue here. Upon notice of termination for cause, Dr. Brooks was entitled to a hearing at which he could be accompanied by counsel. *See* Contract, Petition Exhibit F. The Contract stated that if Dr. Brooks chose to be accompanied by legal counsel at the hearing, he would bear any costs involved. The Contract further stated, however, that "[i]f the charges against the

SUPERINTENDENT are not sustained by a majority vote of the BOARD, the BOARD shall reimburse the SUPERINTENDENT for the actual necessary attorney's fees and disbursements incurred by the SUPERINTENDENT in his defense." *See* Contract, Petition Exhibit F, § 11.D.

Dr. Brooks's contract clearly entitles him to an award of attorneys' fees and costs. The legal fees and costs sought in this proceeding were incurred in this federal action to protect his due process rights in contemplation of the termination hearing initiated by the Board. (There were additional fees and expenses incurred in preparation for the defense of the charges brought against Dr. Brooks by the Board. Those fees and expenses will be sought in a separate action by Dr. Brooks against the Board.) The charges against Dr. Brooks were not sustained because the Board chose to drop its efforts to terminate Dr. Brooks for cause and to buy out the Contract. Consequently, Dr. Brooks is entitled to recover all attorneys' fees associated with the attempted discharge for cause. *See* Contract, Petition Exhibit F, § 11.D. In this proceeding, however, he is seeking only the fees and costs incurred in the federal action without prejudice to his contractual rights to seek the balance of fees and expenses incurred in defending himself against the Board's charges.

B. Section 1988 of 42 U.S.C. provides that the Court has discretion to award attorneys' fees to the prevailing party in an action brought under § 1983.

Another exception to the "American Rule" is applicable when a statutory provision expressly provides for their recovery. *Fleischmann*, 386 U.S. at 717. Section 1983, under which Dr. Brooks brought his lawsuit, provides that any person who is subjected (by a state actor) to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws can bring an action in law or equity for injuries sustained as a result of the deprivation. 42 U.S.C.A. § 1983. Furthermore, § 1988(b) provides that in an action to

enforce a provision of § 1983, the court may, in its discretion, allow the prevailing party to recover a reasonable attorneys' fees as part of the costs. 42 U.S.C.A. § 1988. A court's authority to award attorneys' fees based on § 1988(b) is broad and is not limited to civil rights actions. *Maine v. Thiboutot*, 448 U.S. 1 (1980). In fact, § 1988 applies to all types of § 1983 actions. *Maher v. Gagne*, 448 U.S. 122, 128 (1980) (stating that the language of § 1988, nor its legislative history, provides any basis for making distinctions as to its application based on the particular type of action at issue).

Although § 1988 applies to all § 1983 actions, it only permits a "prevailing party" to recover attorneys' fees. 42 U.S.C.A. § 1988; *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). To qualify as a prevailing party, a plaintiff must obtain at least some favorable relief on the merits of his claim. *Farrar*, 506 U.S. at 111. That said, nothing in § 1988 conditions a court's power to award fees on the full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. *Maher*, 448 U.S. at 129. For purposes of awarding attorneys' fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or settlement, without formally obtaining relief. *Id*. Prevailing through a settlement rather than through litigation does not weaken a party's claim to fees. *Id*.

After the Board commenced proceedings to remove Dr. Brooks as Superintendent, Dr. Brooks filed suit under § 1983 alleging that his due process rights had been violated. Because Dr. Brooks's action was founded upon § 1983, § 1988 would permit him to recover attorneys' fees if he was a prevailing party in that action. The case resulted in a buyout of Dr. Brooks's contract. The buyout was essentially a settlement and should be treated as such. Dr. Brooks is a prevailing party in his § 1983 suit because the buyout was a

vindication of his rights, sufficient to bestow prevailing party-status upon him for purposes of § 1988. *See Maher*, 448 U.S. 129.

C. Dr. Brooks's request for attorneys' fees is reasonable.

The lodestar formula is the starting point in establishing attorney fees. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). To determine the lodestar, a court will multiply the number of hours reasonably expended by the reasonable hourly rate in order to determine the lodestar. *Id.* This figure provides the court with an objective basis to make an initial estimate of the value of the movant's legal services. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar method focuses on the "significance of the overall relief obtained by the plaintiff in relation to the hours actually expended on the litigation." *Jensen v. Clarke,* 94 F.3d 1191, 1203 (8th Cir. 1996). After making this initial calculation, courts generally consider twelve factors to determine if the lodestar should be adjusted up or down. These twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.*

The most critical factor in determining the appropriateness of fees is the degree of success obtained. *Fish*, 295 F.3d at 852. However, merely because a plaintiff did not prevail on every contention raised in the suit does not necessarily warrant a reduction in fees. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a

fee." *Emery v. Hunt,* 272 F.3d 1042, 1047 (8th Cir. 2001). Courts may "rely on their own experience and knowledge of prevailing market rates" when considering the reasonableness of the hourly rate used in the lodestar calculation. *Warnock v. Archer,* 397 F.3d 1024, 1028 (8th Cir. 2005).

As explained below, in an application of each of the above-listed factors to this case, Dr. Brooks and his attorneys obtained a successful outcome on a complex matter that involved intense public scrutiny and time pressure. Therefore, the reasonableness factors weigh heavily in favor of a full award of attorneys' fees.

*1. The time and labor required to represent Dr. Brooks and the preclusion of employment by the attorney due to acceptance of the case*

Williams & Anderson vigorously defended Dr. Brooks, challenging the Board on numerous attempted violations of Dr. Brooks's contractual and constitutional rights. The representation required a large number of attorney and paralegal hours over a short period of time. The attorneys representing Dr. Brooks worked nights and over a weekend to insure that Dr. Brooks had the best possible representation and other clients were not neglected. The attorneys worked on this case for a total of sixty-seven hours over the weekend of May 5-6, preparing for the preliminary injunction hearing on May 7 and addressing other urgent matters. *See* Itemization of Services, Petition Exhibit E, p. ___. Attorneys attended regular and special meetings of the Board, some late into the evening.

Due to the urgent nature of this litigation, Dr. Brooks's attorneys were required to devote a disproportionate amount of their available time to the preparation for the hearing on Dr. Brooks's motion for a preliminary injunction. The nature of the preliminary injunction and the short time frame to prepare for the hearing necessitated the full attention of a significant team of experienced attorneys.

*2. The novelty and difficulty of the questions*

Williams & Anderson's representation of Dr. Brooks required the firm to address several complex and difficult questions within a short period of time. The matter was highly fact-specific and required review of thousands of pages of documents including: Board minutes; reports to and by the District; budgets and other financial documents; Board and District policies; emails and other documents obtained pursuant to Freedom of Information Act requests; the Quattlebaum report and opinion on unitary status; past Arkansas Attorney General Opinions; and past and current media coverage.

*3. The skill requisite to perform the legal service properly*

The handling of this case required particular skill and care because of the constitutional issues and the impact of federal and state law. Mr. Anderson, Ms. Pulliam and Mr. Askew have broad experience in federal cases and they are skilled in handling federal issues.

*4. The customary fee*

Dr. Brooks's attorneys billed their customary rates for this matter, as explained in the affidavit of Philip S. Anderson. These fees are reasonable and in line with fees ordinarily charged in Little Rock, Arkansas, for attorneys of similar skill and experience. In accordance with its usual practice, Williams & Anderson used a team approach and assigned each task in this case with care. Less experienced attorneys, who bill at a lower rate, were used whenever possible. Paralegals were used when appropriate.

*5. Whether the fee is fixed or contingent*

Like almost all of the work performed by Williams & Anderson, this matter was billed on a fixed-fee hourly basis. The fees requested were computed at the same hourly billing rates that Williams & Anderson charges its other clients.

*6. Time limitations imposed by the client or the circumstances*

As discussed above, this matter was urgent and arose without warning. Attorneys worked many evening and weekend hours in order to represent Dr. Brooks and meet commitments to other clients.

*7. The amount involved and the results obtained*

Dr. Brooks successfully and vigorously defended himself in confronting the charges against him, and as a result of his defense the Board dropped the charges against him, electing to buy out his contract. This federal action was a key factor in obtaining this outcome.

*8. The experience, reputation and ability of the attorneys*

Philip S. Anderson, who participated in this case, has practiced law for over forty years and has extensive experience in complex litigation involving media, securities and business matters. *See* Affidavit of Philip S. Anderson. Janet Pulliam, who took a lead in representing Dr. Brooks, has a depth of knowledge and experience in the fields of education and employment law. *Id.* at ¶ 5. Ms. Pulliam also has broad experience practicing before the federal courts and served as a senior law clerk for U.S. District Court Judge William R. Wilson, Jr., working with the court in the creation of a Multi-District Litigation Proceeding. *Id.* Jess Askew III concentrates in the areas of business and commercial litigation and media law. Affidavit of Philip S. Anderson at ¶ 6. He practices regularly in federal courts and

clerked for Circuit Judge Richard Sheppard Arnold of the United States Court of Appeals for the Eighth Circuit. *Id*.

*9. The undesirability of the case*

This case against the local school board and its individual members could have been a public relations nightmare for any law firm. Williams & Anderson committed to the engagement well before it became apparent that Dr. Brooks would garner significant public support. It was an honor and a pleasure to represent Dr. Brooks, but that does not negate the fact that Williams & Anderson took a risk in accepting the engagement.

*10. The nature and length of the professional relationship with the client*

Due to the sudden and intense nature of the representation, Dr. Brooks's attorneys had a very short time in which to gain an understanding of all of the facts and circumstances related to his case. Dr. Brooks had no idea that the Board intended to terminate him for cause until Dr. Mitchell made her radio announcement on April 6. Consequently, he was not represented by counsel until that date. Williams & Anderson had no previous contact with Dr. Brooks.

*11. Awards in similar cases*

It is well established that a prevailing party in a § 1983 action is entitled to reasonable attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id*. (internal quotations and citations omitted).

**III. Conclusion**

Dr. Brooks is entitled to a full award of attorneys' fees and recoverable costs from this Court under his employment contract with the Little Rock School District for his representation in this federal action. (He will seek the balance of his fees and expenses pursuant to his contract in a separate action against the Board.) In addition, Dr. Brooks is entitled to those fees and costs as a prevailing plaintiff in his 42 U.S.C. § 1983 action. For these reasons, Dr. Brooks asks this court to issue an order requiring the District to reimburse him for attorneys' fees in the amount of $67,359.50 and costs in the amount of $3,061.31.

Respectfully submitted,

WILLIAMS & ANDERSON PLC
111 Center Street, 22nd Floor
Little Rock, Arkansas 72201
Telephone: (501) 372-0800
Facsimile: (501) 372-6453

By: /s/ Philip S. Anderson
Philip S. Anderson, Ark. Bar #60001
Jess Askew III, Ark. Bar # 86005
Janet L. Pulliam, Ark. Bar #79233
Clayborne S. Stone, Ark. Bar #2003102

*Attorneys for Roy G. Brooks, Ed.D*

**CERTIFICATE OF SERVICE**

I, Philip S. Anderson, hereby certify that on this 30th day of July, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Morgan E. "Chip" Welch, Esquire
Welch and Kitchens, LLC
One Riverfront Place
Suite 413
North Little Rock, AR 72114

Terrence Cain, Esquire
208 Brown Street
Little Rock, AR 72205-5841

/s/ Philip S. Anderson